**MEMORANDUM**

TO: Thomas M. Dawson                                             May 12, 2005
FM: Dr. Thomas W. Langford and
    Ms. Debbie McGregor

RE: Analytic Activities Undertaken by the Defense
    in the Matter of U.S. v. Rinaldi

**INITIAL DATA**

Computer sensible files of the billings by Dr. Sergius Rinaldi for orthodontic services through the Delta Dental Plan and the Doral Dental Plan were made available to the Defense through the Office of the Assistant U. S. Attorney as of September 17, 2002.

Delta Dental Plan
The data related to the claims to the Delta Dental Plan by Dr. Sergius Rinaldi for orthodontic services covered dates of service during the period January 9, 1996 through February 5, 1999. There were 9,072 records provided in the form of a Microsoft Access© table. The tabulation included fields showing:
> Group Number
> Claim Number
> Recipient ID
> Recipient First Name
> Recipient Last Name
> Procedure Code
> Service Date
> Amount Charged
> Amount Paid
> Payment Date
> Disposition Codes
> Claim Type
> Provider Name
> Provider License Number

Doral Dental Plan
The data related to the claims to the Doral Dental Plan covered dates of service during the period March 1999 through July 2001. There were 8,941 records in four Microsoft Excel© files. The files provided fields showing:
> Subscriber ID
> Member Name
> Service Date
> Code
> Billed Amount
> Paid Amount
> Pay Date
> Service Denial Reason*
> Claim Denial Reason*

*The latter two fields were provided only for the files covering the period March 1999 through May 2000.

1

Direct State Payments

An initial attempt to identify the payments made directly by the State of Illinois to Dr. Rinaldi that did not pass through the third-party payers was undertaken through a request to the Illinois Office of the Comptroller for all records, invoices, etc. The data available from this source was limited to summary data by payment warrant and did not include necessary detailed information concerning patient visits.

Copies of the C-13 vouchers initiated by the Illinois Department of Children and Family Services (DCFS) or other agencies, including associated documentation, were collected and made available through the Medicare Fraud division of the Illinois State Police. These files were photocopied and Bates stamped as of November 14, 2002. There were approximately 10,138 pages of documents related to 5,766 individual patient visits billed. Approximately 75.5 hours were expended in the development of a data file of the C-13 information using Microsoft Excel©. The file included the following fields:

    Locator (Bate number)
    Agency
    Case ID
    Recipient ID
    Recipient Last Name
    Recipient First Name
    Service Date
    Invoice Number
    Voucher Number
    Voucher Date
    Amount Paid

It should be noted that although the photocopies of the documents provided were of high quality, the initial documents frequently were the last pages of multiple copy form and were marginally legible. It was necessary to review related documentation where available, to determine the appropriate data. Further, typographic, illegible handwriting, transcription, and other errors compounded the problems of data entry.

**PRELIMINARY EDITS**

The initial data files related to billings to the Doral Dental Plan and the Delta Dental Plan included multiple records for many patient visits due to multiple procedures performed on the same visit, denial of coverage, or inadequate documentation. Since it was the intent of this study to generate a file representing individual patient visits, irrespective of the number of procedures performed on that specific date, it was necessary to eliminate all duplicate records involving the same individual (i.e., similar Recipient ID) for the same date of service. Further, such edits were intended to identify and remove from the universe all multiple billings and/or payments made for the same individual and procedure on the same date of service.

The editing procedure for the Delta and Doral data was to list all records provided alphabetically sorted by name of recipient and to visually identify each instance of a duplicate record for the same date of service. This visual review of all the Delta and Doral records was completed between October 26 and November 12, 2002. In those instances when more than one procedure was performed during a single patient visit, the sum of the amounts billed and amount paid were added for the surviving record. Using the marked listing, copies of the Delta and Doral data files were edited to delete all identified duplicates and to adjust the billed and paid amounts were required. This redaction eliminated 2,031 records in the Delta file resulting in a final redacted file having 7,041 records of patient visits. The Doral redaction eliminated 257 records resulting in a final redacted file having 8,684 records of patient visit.

It should be noted that a comparable editing of the C-13 voucher data was not undertaken, as it was understood that the paper files provided related only to invoices processed by DCFS/IDPA[1] and that the agency processing procedures would have identified and eliminated duplicate billing.

**STATISTICAL SAMPLE**

The sample selection was completed using the RAT-STATS[2] statistical package as designed for the Office of Audit Services of the U. S. Department of Health and Human Services. RAT-STATS is the primary statistical tool used by the Office of Audit Services for the review of Medicare contractors. Included in the statistical package is a random number generator which has been certified by the National Bureau of Standards with regard to various aspects of randomness.

It was determined that random statistical samples would be drawn from the universe of patient visits to Dr. Rinaldi from each of the three payer records, that is, Delta Dental Plan, Doral Dental Plan, and the C-13 Vouchers through IDCFS/IDPA. It was understood that the patient-visit as the basic element of the universe to be sampled would provide the best measure of the extent of improper billing, reflective of the charges against Dr. Rinaldi. Further, it was anticipated that the verification of the patient-visit on or about the claimed date of service would provide the most efficient indication of the veracity of the claim.

Given the relatively large size of the universes, 7,041, 8,684, and 5,766 respectively, it was anticipated that a final sample of 200 visits from each would provide adequate statistical reliability. It was recognized that there existed a significant likelihood that some of the individuals drawn in the sample could not be located, given the resources available. Therefore, an initial sample sequence of 400 patient visits was drawn from

---

[1] Therefore, instances for which Dr. Rinaldi may have billed DCFS/IDPA and no payment was authorized or made would not be included in the source documents. This is significantly different from the Delta or Doral files noted above.
[2] Office of Audit Services, Office of the Inspector General, *RAT-STATS Manual and Self-Extracting Program Files* (October 1998) as downloaded from http://oig.hhs.gov/organization/OAS/ratstat

each of the three segments of the universe.[3] The development of the three samples was predicated upon the possible differential error rate for billings submitted to each of the third-party payers. Although this may not be warranted with regard to Delta and Doral, the observed processing errors for the C-13 vouchers may suggest reason for the segmentation of the samples universe.

The RAT-STATS Single Stage Random Number Generator was used with the program using an internal algorithm to generate the seed number. The output of this program was a listing of the elements selected showing the sample sequence (order of selection) and the index number of the record. The preservation of the order of the sample selection was important, such that when an individual in the initial 200 sample could not be located, the 201st record would be added to the sample. It is assumed that there would be no statistical bias in the inability to locate patients; therefore, the substitution of the next randomly sampled record would not affect the statistical validity of the study.

Initial files of the 400 records included in the sample for each payer were developed. This file was created by noting the record number identified in the sample and copying that record into the sample file and the addition of a sample sequence number. Printed copies of these files were provided to the Delta Dental Plan, Illinois Department of Children and Family Services, and the Illinois Department of Public Aid as of January 3, 2003 as part of the subpoena (01-CR-30110) requesting information relating to the sex, race, date of birth, and last known address for each individual based upon recipient identification number. Due to the inclusion of multiple patient visits in the statistical sample by the same individual, only **740** unique individual names and recipient identification numbers were requested.

**ERROR ANALYSIS**

Initial analyses of the records of the individual patient-visits included in the statistical samples suggested a number of errors in the data. Principally, these errors relate to the recipient identification numbers and recipient names due to the initially limited ability to analyze other data elements. The identified errors may be categorized as systemic errors, data entry errors, and/or a redaction error. It was not the intent of this analysis to determine the extent or responsibility for the data errors, but rather to correct (for purposes of this statistical study) the patient-visit records included within the statistical sample.

Recipient Identification Numbers:
It was understood that the Illinois Department of Public Aid or the Illinois Department of Children and Family Services assigned a unique nine-digit recipient identification number to each and every individual provided with services in the State assistance

---

[3] It may be noted that an initial random sample of 450 records was drawn from the Doral records. Given that sample order has been preserved, records 401 through 450 (the last 50 records drawn) have been eliminated without compromising the statistical integrity of the sample.

system. Further, it was understood that the recipient identification number would be the principal identifier (rather than name) within the system.

A preliminary review of the data initially identified a number of instances of multiple identification numbers with a single individual, i.e., records with the same name, but differing recipient identification numbers. A detailed review of the C-13 voucher records suggested that a large proportion of the initially identified errors were due to data entry error, either from mechanical error or illegibility of the initial source document. Where possible, these erroneous identification numbers have been corrected in the C-13 data file. The relatively few inconsistencies in the recipient identification numbers in the Delta and Doral data have not been able to be verified and corrected due to the unavailability of source documentation.

Recipient Names:
The existence of multiple names associated with a single recipient identification number may be due to: a change of legal name reflecting adoption or common usage; spelling variations; or data entry errors. Where possible, these multiple names have been corrected in the C-13 data file or additional notation provided regarding apparent change of name.

Data Entry Errors:
As noted above, a significant number of data entry errors were identified in the C-13 voucher file. A substantial proportion of these errors could be directly ascribed to the illegibility of the source documentation.

Redaction Errors:
In the process of correcting a name and recipient identification number error identified in the Doral sample file, a corrected name was inadvertently inserted in the file without corresponding changes in the remaining entry, resulting in a sequential mismatch of the remaining entries in the file. This error was identified and corrected as of November 2003.

As previously noted, the data included in the C-13 file was entered from the copies of the invoices and supporting documents as prepared by the Illinois Department of Children and Family Services and the Illinois Department of Public Aid for direct payment outside the third-party payer system. Inasmuch as some of these documents were illegible or contained erroneous identifiers, the initial data files contained numerous errors in addition to the transcription errors.

In order to proceed with the interview process as quickly as possible, the selection of the random statistical sample from the C-13 data file was undertaken prior to a detailed review of the data. As a result of subsequent reviews of the data number of corrections have been necessary to the initial sample records. In so far as these corrections have been made prior to the interview process, the statistical validity of the sample has not been compromised.

**REFORMATED INFORMATION REQUEST**

In order to determine the extent (if any) of the economic damages due to the erroneous billings of Dr. Sergius Rinaldi may proceed, it is necessary that information concerning: sex, race, date of birth, last known address, and last known telephone number be obtained from the Illinois Department of Public Aid for the individuals in the three random statistical samples drawn. Due to the multiple selections of individuals within the aggregate samples of 1,200 patient visits, information on only 740 individuals has been requested.

It is recognized that the patient addresses which may be available from the patient files of Dr. Rinaldi would be significantly out or date, it is anticipated that many of the recipients will have remained within the casework system of the Illinois Department of Public Aid or at least have remained for a date much more recent than the last visit to Dr. Rinaldi. Therefore, in the interest of time and efficiency for a reasonable determination of the extent of erroneous billings, it is requested that the Illinois Department of Public Aid provide this limited information request as soon as practicable.

**IDPA RESPONSE**

In response to a subpoena issued March 2005, requesting the latest information available from Illinois Department of Public Aid for each of the 740 individuals by recipient identification number. As of April 25, a computer disk and print-out was received listing 723 names of which 47 had no information with regard to address. See **Attachment A**. The response also indicated that they had no information whatsoever with regard to 10 of the identification numbers requested by the defendants. Further, the Department of Public Aid indicated that 10 identification numbers "Were Listed Twice on the Driver File." That is, there appeared to be multiple identification numbers for individuals with the same name.

An initial cursory review of the address information provided suggests that there exists a number of inconsistencies with regard to locator information, improper state, ZIP code, and / or area code of telephone number (where available). The information has been further identified by county, based upon the postal address, and the geographic distribution of the individuals is shown in the attached graphic. See **Attachments B.**

**INTERVIEW PROCESS**

In order to meet the statistical requirements of the sampling process, it is necessary that the patient visits selected in the first 200 selected in the sample sequence. In the event that an individual can not be located with the expenditure of a reasonable effort, then that patient-visit would be replaced in the sample by the next patient-visit in the sample

selection order. It should be noted that there exists instances of the random statistical sample including more than one patient-visit with the same individual. Hence questions relating to each visit by the patient within the sample will be asked at the time of the initial interview.

The interview process will require a face-to-face meeting with the patient to verify whether or not the individual visited Dr. Rinaldi on or about the date noted. <u>To the extent that the data provided by IDPA represents current addresses,</u> it is expected that the interviewer will be able to complete, on average, five interviews per day (including travel). If the data provided by IDPA is not current, it is anticipated that the process will be significantly delayed by the need to locate the patients. It is expected that the process may require at least six months of effort to interview an adequate number of individuals.

Tabulations of the initial 200 patient-visits included in the random samples for each of the three third-party payors (i.e., Doral, Delta, and C-13) by county are shown in **Attachment C**. These tabulations will aid in the development of an efficient interview plan to minimize travel and costs.

In order that the court be made aware of the continuing efforts to proceed with the data collection process, monthly reports will be provided to the court delineating the number of patients located and interviews completed.