**E-FILED**
Friday, 02 September, 2005  04:40:56 PM
Clerk, U.S. District Court, ILCD

**FILED**

SEP 0 2 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

UNITED STATES OF AMERICA )
)
Plaintiff, )
)
v. )
)
SERGIUS A. RINALDI )
)
Defendant. )

Cause No. 01-30110

### GOVERNMENT'S RESPONSE TO DEFEDANT RINALDI'S SECOND MOTION TO RECONSIDER AND MEMORANDUM

Comes the United States of America, by Jan Paul Miller, United States Attorney for the

Central District of Illinois and Patrick D. Hansen, Assistant United States Attorney, and

respectfully requests that this Court deny the defendant's latest Motion to Reconsider, and in

furtherance of this request, states as follows.

1.    At the outset, a Motion to Reconsider an Order filed nearly nine months[1] after the

Order was entered, and on the eve of sentencing (shortly after yet another request for a lengthy

continuance had been denied), should be suspect as to its timing and motivation.

2.    Nevertheless, there is nothing new in the defendant's Motion, or the Exhibits he

relies on. Even if the factual statements he alleges are true (and, as the Government will point

out, they most certainly are not), there is nothing in this latest Motion that he either did not know

---

[1]The Court's Order was entered December 9, 2004. The defendant electronically filed his Motion to Reconsider on August 23, 2005. However, it was not until almost a week later, on August 29, 2005 that the defendant delivered the "exhibits" on which the latest motion is based to the Government. The Government, therefore, had in reality had less than one week to respond to this latest Motion.

1

at the time of his pleas of guilty, at the time of his first Motion to Withdraw and at the time of his first Motion to Reconsider the denial of that Motion to Withdraw. The defendant fails to explain in this Motion why this all could not have been, or should not have been in the exercise of due diligence, presented to this Court during the two and one-half years since he first asked this Court to allow him to withdraw his guilty pleas.

3.    Be that as it may, the defendant has not, and cannot, present *credible* evidence of actual innocence as would be necessary for this Court to reconsider his original Motion.

4.    As to the "bundled/prorata billing" as the defendant now describes it, as will be discussed below, the defendant once again misrepresents matters to this Court and argues these misrepresentations as "facts," while ignoring the real facts he is surrounded by. Regardless, even accepting the defendant's latest argument that he allegedly did not get IDPA Manual Section 100[2], this does not diminish the fact that if he, indeed, used a "bundled/pro-rata billing" system, this "fact" would be well known to him at the time he entered his pleas, at which time he admitted to knowingly submitting fraudulent billings to the government.[3] *United States v. Broce*, 488 U.S. 563, 573-4 (1989). As was held by the Supreme Court,

("The [new evidence] . . . has no bearing on whether respondents' guilty plea served as a relinquishment of their opportunity to receive a factual hearing on a double jeopardy claim. Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty. The trial court complied with Rule 11 in ensuring that respondents were advised that, in pleading guilty, they were admitting guilt and waiving their right to a trial of any kind.

---

[2]As will be discussed in this Memorandum, the government submits that the defendant's own records give lie to this contention.

[3]It has already been established that he knew of the so-called "policy clarification" memo prior to deciding to plead guilty.

2

*Id. See also Eaton v. United States*, 458 F.2d 704, 707 (7th Cir.1972)("[A] defendant's plea of guilty admits, in legal effect, the facts as charged and waives all non-jurisdictional defenses. *Accord, United States v. Riles*, 928 F.2d 339, 342 (10th Cir.1991); *United States v. Yater*, 756 F.2d 1058, 1063 (5th Cir.1985). This Court found that "there has been no change in circumstances which would justify allowing the Defendant to withdraw his guilty plea." R.129, p.26. The defendant has done nothing to change this.

5.      The defendant also seeks to challenge this Court regarding its finding that his alleged adult attention deficit disorder "AADD" is not "credible evidence of actual innocence." He does this with a follow-up report from a psychiatrist (on which he originally relied) which is dated February 7, 2005.[4]  In doing so (much like his argument regarding the IDPA manual), he casts his own reading on this Court's Order of December 9, 2004, picks out certain passages and ignores the overall holding. Once again, there is nothing new which would cause this Court to reconsider its two previous rulings denying the defendant's Motion for New Trial.

## Discussion of Issues

### A.      Bundled Billing/Pro-rata Billing

The defendant now claims that he did not receive Section 100 of the IDPA Provider Manual because he is not a physician. His sole source to make this allegations (beyond his own incredible statements) lies with a series of supposed "interviews" his private investigator conducted with Dave Spinner, the manager of the Dental area at IDPA, in April of 2005[5].  Much

---

[4]Again, there is no explanation for his holding on to this document for almost seven months if it is as important as he claims.

[5]Once again, there is no explanation as to why this was done over two years after this Court originally denied his Motion to Withdraw, and 5 months after this Court's denial of his first

like he does with his entire argument regarding "bundled billing," he completely ignores the

official IDPA responses provided by those with policy knowledge agency-wide, and instead

chose to cite one mid-level manager who does not have the authority (nor the institutional

knowledge) to cite agency policy. In doing so, and by insisting on the faulty premise that

Rinaldi did not receive Policy Section 100, he is trying to confuse and mislead this Court into

believing there is confusion where none exists.

Rinaldi does have the correct facts surrounding these issues, but has simply chosen to

ignore them. In response to his first FOIA request to IDPA, submitted on April 28, 2005, the

defendant, through a Cleveland, Ohio law firm, asked for any records related to this "Policy

Clarification"and its disavowal (which he identifies as Bates 1026) and was clearly and distinctly

informed that bundled billing "was never an official Department policy, therefore, there was no

need for disavowance." *See* attached Exhibit 1, p.3. This is the same information Rinaldi has

had since becoming a provider in 1981. This did not end the defendant's inquiry, however.

Again, on June 24, 2005, the Cleveland law firm, although not mentioning Rinaldi, filed another

FOIA request to IDPA asking, among other things, for the same information regarding the

"bundled" billing, and the "policy clarification" memo. This time, in a response dated August 5,

2005, they were told,

> The attached [policy clarification] was never an official Department policy and therefore,
> was never applied. This "draft" policy clarification was never distributed because it
> incorrectly stated the Department's reimbursement policy for orthodontia services. As a
> result, there was no need for disavowance.

Ex. 3, p. 4-5. To suggest, and even argue that Rinaldi *relied* on this "bundled/pro-rata billing"

_____

Motion to Reconsider.

4

scenario, therefore, defies reason. It is not the policy of IDPA, and has never been the policy of IDPA. The only suggestion that Rinaldi believed he was acting under the correct policy has been set forth through the defendant's own incredible assertions in his Motion to Withdraw his Plea.

As the government outlined back in 2003 in response to his original Motion to Withdraw (see R.65, pp.11-16), Rinaldi was notified on several occasions by both IDPA and DCFS that he could not bill for services not actually provided. One of the exhibits to the Government's Response To Motion to Withdraw Plea was a letter from DCFS sent to Rinaldi in January of 1997 instructing him to cease billing for children he was not seeing. R.65, Ex.4. A supplement to this was filed two weeks later, attaching yet another letter from DCFS instructing Rinaldi not to bill for children he did not see on the dates claimed. R.66. The Government has attached herewith six additional letters from DCFS directed to Rinaldi and clearly indicating that he would not be paid for services he was not providing. (Exs. 2A through 2F). These letters (modified to delete patient/minor names and social security numbers), with dates ranging from April of 1995 to February of 2000, are yet further evidence that Rinaldi could not have any possible rational belief that the system he was billing was, and is, a fee for service system.

Along the same lines, the Government also pointed out in 2003 that Rinaldi had been audited by the Illinois Department of Public Aid, and attached a copy of the "Summary of Audit Findings" and "Exit Interview" to the Response to his Motion to Withdraw. R.65, Ex.5. As noted in that previous response,

> Additionally, partially as a result of DCFS complaints about the defendant's billings, IDPA conducted an audit of the defendant's practice beginning in October, 1997. This audit found numerous occasions when the defendant could not justify his monthly service charges. During the audit, the defendant was confronted with dozens of instances where he did not have records reflecting any services provided for which he billed. It is

5

significant that almost all of these failures had to do with the billings for monthly services. It is incomprehensible that if the policy of IDPA was to pay for "bundled" services, that it would have made these findings or bothered to conduct an audit. It is equally incomprehensible that the defendant would not reply to these audit findings with his position that his billings were part of a "bundled" system of billing. Instead, he created fake entries on the charts for many of the patients where his records did not match the billings, and submitted them to IDPA following the audit. These falsified medical charts, in essence, make up the false statements charged in Count 12. These falsified charts would not have been necessary if the defendant did not understand that he would only be paid for services actually rendered and reflected in the medical records.

Instead, the audit findings, a copy of which are attached as Exhibit 5, show that the defendant was confronted with these discrepancies, and was specifically advised to review the IDPA Provider's Manual, Chapter 100, topics 112 (maintaining proper medical records for services) and 103 (unkept appointments). The defendant's responses to these issues were that he "would check his records," or that he had "high turnover" of his staff. Nevertheless, he was clearly aware, and consistently reminded that only services actually provided – – and documented - - would be paid by IDPA. The defendant acknowledged these discussions on July 2, 1998 by signing the "exit interview/summary of audit findings" attached to the exhibit.

R.65, pp.13-15. The Government has once again attached this document as an Exhibit to this

filing for this Court's review. Ex. 3. It is abundantly clear that the defendant was specifically

warned on numerous occasions that he could not submit billings for children he did not see, and

was specifically and personally advised regarding section 103 of the policy manual.

Finally, the defendant relies on an "interview" with Dave Spinner to support his

"credible" claim that he did not receive Chapter 100, and was therefore not bound by it. In doing

so, he once again relies on a mid-level employee of one area of IDPA, and completely ignores

the contrary evidence of the Agency Policy presented to him by the agency. In response to the

June FOIA request by the Cleveland law firm, IDPA officials very clearly stated,

The complete revision of the Illinois medical Assistance Program Chapter 100 and general appendices was sent to all enrolled Medical Assistance providers in October, 1992. That manual is included in Attachment C.

6

Ex.4, p. 7. To the next question, the IDPA repeated,

> As stated above, the complete revision of the Illinois Medical Assistance Program Chapter 100 and general appendices were sent to all enrolled Medical Assistance providers in October 1992. Since Dr. Rinaldi was an enrolled dentist from September 15, 1981, through December 25, 2001, he would have received the mailing listed above that were sent during that period.

Ex. 4, p.7. Continuing to argue that he did not receive this manual ("IDPA did not provide evidence that the Defendant actually *received* the documents...") under the umbrella of another Motion to Reconsider is a waste of this Court's time and flies in the face of the records and evidence he possesses.

The incredibility of the defendant's contentions are apparent. The only confusion in the billing policies of IDPA during the time in question is that which the defendant is attempting to create. In fact there was no confusion. Providers, including orthodontists, were to submit claims only for the services actually provided[6] He did not. He knowingly defrauded the government for several years, and admitted to doing so at his plea hearing.

## B. Mental Disease or Defect

Again, the defendant continues to press an argument that this Court has already considered, and rejected. In doing so, he supplies this Court with an additional report of Dr. Chapman with no explanation as to why this report could not have been supplied to this Court before its decision on the defendant's first Motion to Reconsider, and no explanation as to the six month delay. By taking each of these steps the way he has, it appears that he is trying to

---

[6]The defendant also spends some time discussing the Doral manual provisions suggesting that a dentist could bill for two "missed appointments," as if this is some new revelation. The government refers this Court back to its original Response to the Motion to Withdraw, R.65, at page 15 where those provisions are discussed. Once again, this is nothing new or different than the facts of which this Court has already been made aware.

7

engage this Court in a debate or semantical argument over the meaning of "credible evidence of actual innocence," instead of presenting all available facts and evidence to this Court in the first place and accepting a decision on the merits.

Regardless, there is nothing for this Court to reconsider. The defendant's arguments center on the perception that this Court disagreed with his medical professionals that he actually has some mental disease, specifically, AADD. The government submits that he misinterprets the ruling. This Court found that, "The Court observes that some of the symptoms associated with AADD...are quite easily met...However, it is evident from human experience that several of the symptoms of AADD are present in a relatively substantial percentage of the population. The Court declines to hold that the presence of even a large number of these symptoms precludes an individual from forming the requisite intent to defraud." R. 129, pp.16-17. In that order, this Court noted that even the experts who's opinions were presented disagree as to the extent that AADD or a disease with similar symptoms can effect the ability of one to form criminal intent. However, these experts are medical professionals, not judges. It is up for the Court to decide whether these symptoms legally rise to the level necessary to negate criminal intent such as to make the question a factual issue for the jury. This Court has done so, and chosen not to open virtually all future criminal trials to expert opinions regarding whether and to what extent AADD

8

affected the defendant. The defendant has a right to appeal the ruling should he disagree. There

is no need to reconsider.

WHEREFORE, the United States of America respectfully requests that this Court deny

the defendant's latest Motion to Reconsider.

Respectfully Submitted,

JAN PAUL MILLER
UNITED STATES ATTORNEY

By:    _Patrick S. Hansen_

Patrick D. Hansen
Assistant U.S. Attorney
Illinois Bar No. 6187536
318 South 6th Street
Springfield, IL 62701
Tele: 217/492-4450
Fax: 217/492-4512
E-mail: patrick.hansen@usdoj.gov

9



**Rod R. Blagojevich, Governor**
**Barry S. Maram, Director**

## Illinois Department of Public Aid

**Prescott E. Bloom Building**
201 South Grand Avenue East
Springfield, Illinois 62763-0001

**Telephone:** (217) 782-1200
**TTY:** (800) 526-5812

May 20, 2005

Amy S. Leopard
Walter & Haverfield, LLP
The Tower at Erieview
1301 East Ninth Street  Suite 3500
Cleveland, Ohio 44114-1821

Re: Freedom of Information Act request received on April 28, 2005.

Dear Ms. Leopard:

Your correspondence requested copies of any and all records, including drafts and electronic
material related to the development and implementation of the rate methodology used to
determine reimbursement rates for orthodontic services under all IDPA programs, especially any
records related to the prorations for orthodontic services and the use of monthly adjustments for
payments on braces paid by IDPA, Delta Dental or Doral Dental; records related to Center for
Medicare and Medicaid services formerly known as the Health Care Financing Administration
and IDPA's policies and interpretations concerning missed appointments for medical and dental
programs. This information is enclosed.

If you have any questions regarding this response, please contact Sue Gansky in the Springfield
Office of the General Counsel at 217-782-1233.

Sincerely,

John Larsen  SG
Freedom of Information Officer

JL:sg
Enclosure

E-mail: dpa_webmaster@state.il.us          Internet: http://www.state.il.us/dpa/

GOVERNMENT
EXHIBIT

FOIA-1165
Walter & Haverfield, LLP

1. Record related to the development and implementation of the rate methodology used to determine reimbursement rates for orthodontic services under all IDPA programs, especially any Records related to the prorations for orthodontics services and the use of monthly adjustments for payments on braces paid by IDPA, Delta Dental or Doral Dental.

   No such records exist, as the Department does not pro-rate reimbursement for orthodontic services. Rates are established and paid for each individual procedure code. There have always been individual rates set for procedure codes D8080, D8660, D8670 and D8999.

2. Records related to Center for Medicare and Medicaid Services (CMS), formerly known as the Health Care Financing Administration (HCFA), and IDPA's policies and interpretations concerning missed appointments for medical and dental programs.

   The Dental Office Reference Manual, Page G-1 states the Departments policy regarding missed appointments:

   *"Interpretation by the Centers for Medicare and Medicaid Services (CMS) of federal statute prohibit a provider from billing a Medicaid Participant for a missed appointment. It is also important that the administration of your broken appointment policy for Medicaid patients is no more strict than that of your private or commercial patients.*

   *If a Medicaid patient exceeds your office policy for broken appointments and you choose to discontinue seeing the patient, please inform them to contact Doral for a referral to a new dentist."*

   Attached is an e-mail received from CMS that re-states the policy.

3. IDPA, the IDFA Medical Dental Unit, and the IDPA Bureau of Comprehensive Health Services correspondence from and to Delta Dental and Doral Dental regarding orthodontic payments, missed appointments, prorations of orthodontic fees, reimbursement methodologies, and use of the American Dental Association (ADA) procedure codes for dental and orthodontic services.

   This request is burdensome, as there is no time frame stated in the request. The Delta Dental contract began over 20 years ago. The Department would be required to minimally retrieve approximately 20,000 pages from archives and review approximately 16,000 pages in filing cabinets to ensure all such correspondence is retrieved.

4. **Records of any DPA personnel, including David Spinner, Manager of the Medical Dental Unit, and Steven Bradley, the head of the Bureau of Comprehensive Health Services, related to**

   a. **The Dental Policy Clarification date March 2000, a copy of which is attached;**

   b. **The disavowance of the attached Dental Policy Clarification; and**

   c. **IDPA departmental policies and interpretations necessary to implement the dental policy clarification or the revocation of the attached Dental Policy Clarification.**

   The attached document was never an official Department policy; therefore, there was no need for a disavowance.

3:04-cr-30110-JES-BGC    # 157    Page 13 of 47

**From:**      "Kids Oral Health" <kidsoralhealth@list.ncemch.org>
**To:**        <kidsoralhealth@list.ncemch.org>
**Date:**      Wed, Oct 30, 2002 11:07 AM
**Subject:**   Re: Charging for broken/missed appointments

Under the federal Medicaid program, beneficiaries may not be charged for
missed appointments. There is not a distinct Medicaid statutory or
regulatory cite that addresses missed appointments. Rather our policy is
based on our interpretation of several citations.

The reason for this is two-fold. First, a missed appointment is not a
distinct reimbursable Medicaid service (as listed in section 1905(a) of
the Social Security Act) but rather is part of a provider's overall cost
of doing business. The Medicaid rate reflects the cost of doing
business and providers may not impose a separate charge on the
beneficiary.

Second, section 1902(a)(19) of the Social Security Act requires, among
other things, that states provide safeguards to assure that care and
services are delivered in a manner consistent with the best interests of
the beneficiaries. We are concerned that indigent beneficiaries may be
reluctant to seek or receive necessary health services if they have an
outstanding bill with a provider and thereby creating another access
barrier.

CMS has revisted this policy within the last year and there was a
decision made that it would remain the same, prohibiting billing
Medicaid beneficiaries for missed appointments.

Cindy Ruff
CRuff@cms.hhs.gov


>>> "Kids Oral Health" <KidsOralHealth@list.ncemch.org> 10/30/02 07:06AM
>>> >>>
Is there anything in Medicaid statutes or regulations, or in any State's
statutes or regulations, that addresses whether a Medicaid patient can
be charged a fee for a broken or missed appoinment?

Robert Isman, DDS, MPH
California Dept. of Health Services
11155 International Drive
Rancho Cordova, CA 956 '0
(916) 464-3794
(916) 464-3783 fax
risman@pacbell.net



STATE OF ILLINOIS

JESS McDONALD
DIRECTOR

# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES

CHAMPAIGN AREA OFFICE

2125 SOUTH FIRST STREET
CHAMPAIGN, ILLINOIS 61820 – 217/333-1037
217/333-8550 TDD/TTY

April 07, 1995

Dr. Sergius A. Rinaldi
850 South Fourth Street
Springfield, IL 62703

Re: Billing Problems

Dear Dr. Rinaldi:

After reviewing and checking with our DCFS case workers and the Private
Agency workers, I have found some problems in your monthly billing.
Two of the kids that you submitted charges for have not been treated by
you in several months and are home of parent now.

Jayson         went home Jan., 95, therefore the bill that I received
from you yesterday (04-05-95) covering services for Jan. 13, Feb. 17,
and March 17, 95, is incorrect.  After speaking with Diann (nurse at
Hoyleton), she informed me that Nov. 18, 94, was the last time you saw
Jayson.  Therefore, I will process payment to you in the amount of
**$180.00** for Jayson not $380.00 as your billing indicates.

I spoke with the DCFS worker for Brittany        , and was told that
Brittany went home on 01-01-95.  I received a bill from you yesterday
(04-04-95), in the amount of $420.00.  After checking my records, I
find that I have processed payments for Brittany for the months for
Oct., Nov., and Dec. 94, at $60.00 per month.

There were some errors in addition made on some of your statements.  I
have readded each one and will process payment for you within the next
week for the correct amount through March, 1995.

I checked with Public Aid regarding bills that I have processed to them
for payment to you for services extending back to Sept., 1994.  I have
been informed that they are running about 90 to 120 days behind in
making payment.  All vouchers for services prior to Dec., 94, have been
paid by the Comptroller's Office and there maybe some since than that
date in which you have received.

GOVERNMENT
EXHIBIT
2A

If you have questions regarding a particular child, you should contact
me with the child's name and the date(s) of service that you are
questioning.   Copy of corrected bills attached.

Sincerely,

G. Marvarine Pirtle
Medical Programs Manager

cc:   Karen Mannon

3:01-cr-30110-JES-BGC    # 157    Page 16 of 47

# STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 South First Street
Champaign, Illinois 61820
TIN#:37-1141557
D.O.B.11-2-76

ITEM: Brittany
Rinaldi SS#:

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|---|---|---|---|---|
| 0-22-94 | October pd | 60.00 | | 360.00 |
| 1-19-94 | November pd | 60.00 | | 420.00 |
| 2-13-94 | December pd | 60.00 | | 480.00 |
| 2-27-95 | State Check | | 120.00 | 540.00 |
| | | | 420.00 | 420.00 |

---

# STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 South First Street
Champaign, Illinois 61820
TIN#:37-1141557
D.O.B. 12-9-77

S.S.#:
PATIENT: Jayson

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|---|---|---|---|---|
| 10-16-93 | October | 60.00 | | 700.00 CR |
| 11-13-94 | November | 60.00 | | 640.00 CR |
| 12-18-94 | December | 60.00 | | 580.00 CT |
| 1-15-94 | January | 60.00 | | 520.00 CT |
| 2-11-94 | February | 60.00 | | 460.00 CT |
| 3-11-94 | March | 60.00 | | 400.00 CT |
| 4-14-94 | April | 60.00 | | 340.00 CT |
| 5-19-94 | May | 60.00 | | 280.00 CT |
| 6-17-94 | June | 60.00 | | 220.00 CT |
| 7-20-94 | July | 60.00 | | 220.00 CA |
| 8-19-94 | August | 60.00 | | 160.00 CT |
| 9-16-94 | September | 60.00 | | 100.00 CT |
| 10-20-94 | October | 60.00 | | 40.00 CT |
| 11-18-94 | November | 60.00 | | 20.00 |
| 12-9-94 | December | 60.00 | | 80.00 |
| 1-13-95 | January | 60.00 | | 140.00 |
| 2-17-95 | February | 60.00 | | 200.00 |
| 3-17-95 | March | 60.00 | | 260.00 |
| | | | | 320.00 |
| | | | | 380.00 |



**STATE OF ILLINOIS**

**JESS McDONALD**
**DIRECTOR**

# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES

**CHAMPAIGN AREA OFFICE**

2125 SOUTH FIRST STREET
CHAMPAIGN, ILLINOIS 61820 – 217/333-1037
217/333-8550 TDD/TTY

August 14, 1995

Dr. Sergius A. Rinaldi
850 South Fourth Street
Springfield, IL 62703

RE: Barbara    – RIN: 052615382 – CIN: 98 211 D5248603
    Misty      – RIN: 026120378 – CIN: 98 21 D0188802
    LaTashje     RIN: 087377339 – CIN: 98 211 D1839402

Dear Dr. Rinaldi:

This is in response to your fax letter dated 08-08-95, regarding cost to DCFS for orthodontic care for the above named wards. Please be advised that DCFS can not be held responsible for services provided after child has been returned home or for 'no show' appointments.

The Department of Children & Family Services will approve charges not to exceed $3,690.00 per ward for the above named wards. All charges are subject to review by IDPA and given their final approval for payment, at which time payment can be made to you through them.

A letter from you reflecting the effective date and the amount of all increases must be submitted to DCFS for our records before DCFS receives a bill reflecting any such increases. This includes the above named wards.

Should you have further questions please do not hesitate to contact me at my office, 217/333-2420. Thank you for serving our ward(s).

Sincerely,

G. Marvarine Pirtle
Medical Liaison

**GOVERNMENT**
**EXHIBIT**
26

*Printed on Recycled Paper*

TOTAL P.04



**STATE OF ILLINOIS**

JESS McDONALD
DIRECTOR

# DEPARTMENT OF
## CHILDREN AND FAMILY SERVICES

SOUTHERN REGIONAL OFFICE

10 COLLINSVILLE AVENUE
EAST ST. LOUIS, ILLINOIS 62201 - 618/583-2100
618/583-2141 FAX
618/583-2111 TDD/TTY

September 30, 1995

Dr. Sergius Rinaldi
Hyten Building
2110 Troy Road
Edwardsville, Illinois  62025

Dear Dr. Rinaldi:

The following children have been approved for payment of monthly orthodontic
visits due to rejection by Ill. Dept. of Public Aid.  Services beyond the
treatment plan for these children must have this Department's approval.

> Danielle
> Tonya
> Jennifer
> Stephen
> Katrice
> Yolanda
> Joanna
> Robert

Rejection sheets submitted by your office seem to indicate that there may be
insufficient information available for the Delta Dental consultants to make a
determination.  Please insure that future treatment plans submitted to the Delta
Dental consultants include all the necessary information such as  a) a treatment
plan  b) pertinent x-rays c) plaster models  d) dental prior approval form
e) photographs  f) other dental evidence you deem necessary.

Please be aware that any new referrals for orthodontic services that have been
denied by Delta Dental consultants will be paid at the Ill. Dept. of Public
Aid rate only.  You may wish to obtain those rates when submitting requests for
treatment.



GOVERNMENT
EXHIBIT
2C

R02465

-2-

Payment for orthodontic services will be made only for children who are medicaid reimbursable and where services are actually rendered.  Payment will not be made for 'no shows' nor where a child is no longer a ward of the Illinois Department of Children and Family Services.

Thank you for your cooperation in this matter.

Sincerely yours,

*Ethel L White*

Ethel L. White
Medical Liaison
Southern Region-ESTL Area

*Derek A. Hobson*

Derek A. Hobson
Manager
Administrative Services
Southern Region

cc:   Anthony Jenkins, Regional Adminstrator/So.Rgn.
      Ed Doornbos, Health Systems Administrator
      Deborah Hicks, Business Manager/So.Rgn.
      Roberta Hardy, Supervisor, IDPA
      Barbara Garrison, Medical Liaison, Southern Region-Marion Area

R02466



**STATE OF ILLINOIS**

GEORGE H. RYAN, GOVERNOR
JESS McDONALD, DIRECTOR

# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES
## CHAMPAIGN AREA OFFICE

2125 SOUTH FIRST STREET     217-333-2420
CHAMPAIGN, ILLINOIS 61820    217-333-8550/TTY    217-333-4185/FAX

October 12, 1999

Dr. Sergius A. Rinaldi
850 South Fourth Street
Springfield, IL 62703

Re: Closed Cases

Dear Dr. Rinaldi:

The cases named below are no longer active cases with the Department of
Children & Family Services.

| Case Name | DCFS ID | Closing Date |
|-----------|---------|--------------|
| Misty | D0188802 | 07/27/99 |
| Joseph | C9538901 | 02/26/98 |
| Melanie | 29069403 | 02/28/99 |
| Alison | D1229104 | 04/30/98 |
| Stephanie | E6768001 | 09/30/98 |
| Shaland | E8199302 | 07/31/97 |

Please discontinue sending monthly billings to me regarding these cases.
Should you have further questions, please contact me.

Sincerely,

G. Marvarine Pirtle
Medical Programs Manager

GOVERNMENT
EXHIBIT
2D



**STATE OF ILLINOIS**

GEORGE H. RYAN, GOVERNOR
JESS McDONALD, DIRECTOR

# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES

**CHAMPAIGN AREA OFFICE**

2125 SOUTH FIRST STREET      217-333-2420
CHAMPAIGN, ILLINOIS 61820    217-333-8550/TTY    217-333-4185/FAX

January 24, 2000

Dr. Sergius A. Rinaldi
850 South Fourth Street
Springfield, IL 62703

Re: Closed Cases

Dear Dr. Rinaldi:

The case named below is no longer an active cases with the Department of
Children & Family Services.

| Case Name | DCFS ID | Closing Date |
|-----------|---------|--------------|
| Stephanie | E6768001 | 01/16/98 |
| LaSchunne | E6639502 | 12/01/99 |

Also, after checking with the private agency worker, Kelly Webster, you
did not see LaSchunne     Oct. 06, Nov. 04, Dec. 02, 1999, nor did you
see LaSchunne on Jan. 03, 2000.  Your last treatment to LaSchune was on
Sept. 27, 1999.  I will process payment to you in the amount of $60.00 for
the Sept. 1999 services.

Please discontinue sending monthly billings to me regarding these cases.
Should you have further questions, please contact me.

Sincerely,

G. Marvarine Pirtle
Medical Programs Manager



GOVERNMENT
EXHIBIT
2E



# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES

**STATE OF ILLINOIS**

George H. Ryan, Governor

Jess McDonald, Director

4500 SOUTH SIXTH STREET ROAD            217-786-6830
SPRINGFIELD, ILLINOIS 62703-5192        217-786-7244 / TTY

January 20, 2000



Department of Children and Family Services
2125 S First Street
Champaign, IL. 61820
Attn: Marvine Pritle

Dear Provider,

The attached bill submitted to our agency cannot be processed due to the following reason(s):

This child appears to be not from our region, when looking on the Cr01 screen it appears that this child may be from your region. Therefore I am sending this bill to you for processing.

If you have any questions, please feel free to call me at the number above. Thank you for your cooperation in this matter:

Sincerely,

Mary C Havener

Mary Havener
Springfield Area
Medical Liaison

## SERGIUS A. RINALDI, D.M.D., M.S.
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Mary Havener
Dept. of Children & Family Services
4500 South Sixth Street
Springfield, IL  62707
Stephanie
— EC2L8001



| PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|---|---|---|---|
| August | 65.00 | | 510.00 |
| September | 65.00 | | 575.00 |
| State Check | 65.00 | | 510.00 |
| State Check | 65.00 | | 445.00 |
| State check | | 65.00 | 380.00 |
| State Check | | 65.00 | 315.00 |
| October | 65.00 | | 380.00 |
| November | 65.00 | | 445.00 |
| State Check | | 65.00 | 380.00 |
| December | 65.00 | | 445.00 |
| January | 65.00 | | 510.00 |
| February | 65.00 | | 575.00 |
| March | 65.00 | | 640.00 |
| April | 65.00 | | 705.00 |
| May | 65.00 | | 770.00 |
| June | 65.00 | | 835.00 |
| July | 65.00 | | 900.00 |
| August | 65.00 | | 965.00 |
| September | 65.00 | | 1030.00 |
| October | 65.00 | | 1095.00 |
| November | 65.00 | | 1160.00 |
| December | 65.00 | | 1225.00 |
| January | 65.00 | | 1290.00 |

JAN 2000

---

## SERGIUS A. RINALDI, D.M.D., M.S.
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Mary Havener
Dept. of Child & Family Services
4500 South Sixth Street
Springfield, IL  62707

Dr. Rinaldi's S.S.#:
Patient: LaSchunne
TIN#:  37-1141557
D.O.B. 11-13-79
0381/0272/01
ECC 393522

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|---|---|---|---|---|
| 3-4-99 | March | 60.00 | | 480.00 |
| 4-2-99 | April | 60.00 | | 540.00 |
| 5-4-99 | May | 60.00 | | 600.00 |
| 6-2-99 | June | 60.00 | | 660.00 |
| 7-5-99 | July | | 60.00 | 600.00 |
| 8-3-99 | August | | 60.00 | 540.00 |
| 7-14-99 | August 2d | 60.00 | | 540.00 |
| -1-99 | State Check of B pay | | 120.00 | 600.00 |
| 8-19-99 | State Check | 60.00 | | 540.00 |
| 0-6-99 | October | 60.00 | | 600.00 |
| 9-22-99 | State Check | | 120.00 | 540.00 |
| 11-4-99 | November  ND | | 60.00 | 600.00 |
| 12-2-99 | December  ND | | 60.00 | 660.00 |

JAN 2000
BUS. UNIT

119262 x3 613

# DEPARTMENT OF
# CHILDREN AND FAMILY SERVICES
## CHAMPAIGN AREA OFFICE

**STATE OF ILLINOIS**

GEORGE H. RYAN, GOVERNOR
JESS McDONALD, DIRECTOR

2125 SOUTH FIRST STREET     217-333-2420
CHAMPAIGN, ILLINOIS 61820     217-333-8550/TTY     217-333-4185/FAX

February 07, 2000

Dr. Sergius A. Rinaldi
850 South Fourth Street
Springfield, IL 62703

Re: Billing problems

Dear Dr. Rinaldi:

I have checked with the appropriate worker for each case listed below and
I have found billing errows with eash one.

| Case Name | DCFS ID | Last visit | Braces Off |
|---|---|---|---|
| LaToia | C9009503 | | 05 or 06/99 - per adoptive mom |
| ., Iriale | D4199403 | 05/99 | - per facility nurse |
| , Daniel | 25738101 | 11/99 | - per case worker |
| Magnolia | 80738405 | | 08/99 - per the facility nurse, braces were removed by a local doctor |
| Timothy | E1038503 | - child did not show on 01/10/00 - worker | |
| Nicole | 54767703 | - child did not show 12/09/99 nor 01/10/00 | |
| Zachery | D5339403 | - child did show on 01/10/00 per worker | |
| ., Misty | D0188802 | - case closed 07/27/99 as indicated in my 10/99 memo to you. | |
| , Joseph | C9538901 | - case closed 02/26/98 as indicated to you in a memo 10/99. | |

Please discontinue sending monthly billings to me regarding these cases.
Should you have further questions, please contact me.

Sincerely,

G. Marvarine Pirtle
Medical Programs Manager

GOVERNMENT
EXHIBIT
2F

STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023



Children's Foot

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 South First Street
Champaign, Il 61820

Dr. Rinaldi's S.S.#:                    TIN#:  37-114] 557
Patient: Timothy        E/038507  045 38/407

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|----------------------|--------|------|-------------|
| | | | | 260.00 |
| 3-22-99 | State Check | | 65.00 | 195.00 |
| 5-3-99 | May | 65.00 | | 260.00 |
| 6-1-99 | June | 65.00 | | 325.00 |
| 5-28-99 | State Check | | 130.00 | 195.00 |
| 7-8-99 | July | 65.00 | | 260.00 |
| 8-5-99 | August | 65.00 | | 325.00 |
| 7-20-99 | State Check | | 130.00 | 195.00 |
| 9-7-99 | September | 65.00 | | 260.00 |
| 10-6-99 | October | 65.00 | | 325.00 |
| 9-22-99 | State Check | | 130.00 | 195.00 |
| 10-22-99 | State Check | | 65.00 | 130.00 |
| 11-11-99 | November | 65.00 | | 195.00 |
| 12-9-99 | December  Pd | 65.00 | | 260.00 |
| 1-10-00 | January  No show | 65.00 | | 325.00 |
| | per Dr. | | | |
| | William's Direction is discharging him | | | |
| | on 02-10-00, per Jay Smith | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

119262 x3 613

STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023



FEB 2000

Mrs. Marvine Pirtle
Dept. of Children & Family Services
2125 South First Street
Champaign, Il 61820

Dr. Rinaldi's S.S.#:      TIN#: 37-1141537

Patient: Latoia    C 9009503    980 32 8819

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE 560.00 |
|---|---|---|---|---|
| 5-12-99 | May | 60.00 | | 620.00 |
| 6-10-99 | June | 60.00 | | 680.00 |
| 5-27-99 | State Check | | 120.00 | 560.00 |
| 7-8-99 | July | 60.00 | | 620.00 |
| 8-9-99 | August | 60.00 | | 680.00 |
| 8-9-99 | State Check | | 120.00 | 560.00 |
| 9-1-99 | September   Pd | 60.00 | | 620.00 |
| 10-6-99 | October | 60.00 | | 680.00 |
| 9-22-99 | State Check | | 120.00 | 560.00 |
| 11-11-99 | November | 60.00 | | 680.00 |
| 12-9-99 | December | 60.00 | | 740.00 |
| 1-10-00 | January | 60.00 | | 800.00 |
| | Braces of May & June 99 per adults | | | |
| | mouth Billy Hunt | | | |

119262 x3 613

STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 S. First St.
Champaign, Il  61820

Dr. Rinaldi's S.S.#:              TIN#:  37-1141557
PATIENT: Daniel          D.O.B.  6-6-79

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|---------------------|--------|------|-------------|
| | | | | 260.00 |
| 9-1-99 | September | 65.00 | | 325.00 |
| 10-6-99 | October | 65.00 | | 390.00 |
| 9-22-99 | State Check | | 130.00 | 260.00 |
| 10-22-99 | State Check | | 65.00 | 195.00 |
| 11-11-99 | November | 65.00 | | 260.00 |
| 12-9-99 | December | 65.00 | | 325.00 |
| 1-10-00 | January | 65.00 | | 390.00 |
| | | | | |
| | | | | |
| | per DCFS Case Worker | | | |
| | | | | |
| | | | | |

119262 x3 613

STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Child & Family Services
2125 South First Street
Champaign, Il 61820

Dr. Rinaldi's S.S.#:                    TIN#: 37-1141557
Patient: Misty

DO198802

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|---------------------|--------|------|-------------|
| | | | | 195.00 |
| 3-16-99 | March | 65.00 | | 260.00 |
| 4-14-99 | April | 65.00 | | 325.00 |
| 3-22-99 | State Check | | 65.00 | 260.00 |
| 5-12-99 | May | 65.00 | | 325.00 |
| 6-10-99 | June | 65.00 | | 390.00 |
| 5-27-99 | State Check | | 130.00 | 260.00 |
| 7-8-99 | July | 65.00 | | 325.00 |
| 8-6-99 | August | 65.00 | | 390.00 |
| 7-20-99 | State Check | | 130.00 | 260.00 |
| 9-7-99 | September | 65.00 | | 325.00 |
| 8-18-99 | State Check | 65.00 | | 260.00 |
| 10-6-99 | October | 65.00 | | 325.00 |
| 9-22-99 | State Check | | 65.00 | 260.00 |
| 11-11-99 | November | 65.00 | | 325.00 |
| 12-9-99 | December | 65.00 | | 390.00 |
| 1-10-00 | January | 65.00 | | 455.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

119262 x3 613

STATEMENT

Closed 2-26-96
0

SERGIUS A. RINALDI, D.M.D., M.S.
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

FEB 2000
REC'D
BUS. UNIT

Mrs. Marvarine Pirtle
Dept. of Child & Family Services
2125 South First Street
Champaign, IL 61820
Dr. Rinaldi's S.S.#:                    TIN#:  37-1141557
Patient: Joseph              D.O.B. 4-3-79
                    C 95-3850/

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|----------------------|--------|------|-------------|
|      |                      |        |      | 1260.00 |
| 2-4-99 | February | 65.00 | | 1325.00 |
| 3-4-99 | March | 65.00 | | 1390.00 |
| 4-1-99 | April | 65.00 | | 1455.00 |
| 5-3-99 | May | 65.00 | | 1520.00 |
| 6-1-99 | June | 65.00 | | 1585.00 |
| 7-8-99 | July | 65.00 | | 1650.00 |
| 8-6-99 | August | 65.00 | | 1715.00 |
| 7-20-99 | State Check | | 715.00 | 1000.00 |
| 9-7-99 | September | 65.00 | | 1065.00 |
| 10-6-99 | October | 65.00 | | 1130.00 |
| 11-11-99 | November | 65.00 | | 1195.00 |
| 12-9-99 | December | 65.00 | | 1260.00 |
| 1-10-00 | January | 65.00 | | 1325.00 |
| | | | | |

119262 x3 613

STATEMENT



**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Child & Family Services
2125 South First Street
Champaign, Il   61820

Dr. Rinaldi's S.S.#:                    TIN#: 37-1141557
Patient: Iriale        D4199403    D.O.B. 5-1-82
                                    06024 8993

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|---------------------|--------|------|-------------|
|       |                     |        |      | 200.00 |
| 3-4-99 | March | 60.00 | | 260.00 |
| 4-1-99 | April | 60.00 | | 320.00 |
| 3-22-99 | State Check | | 60.00 | 260.00 |
| 5-3-99 | May  Pd last visit | 60.00 | | 320.00 |
| 6-1-99 | June | 60.00 | | 380.00 |
| 5-27-99 | State Check | | 120.00 | 260.00 |
| 7-8-99 | July | 60.00 | | 320.00 |
| 8-6-99 | August | 60.00 | | 380.00 |
| 7-20-99 | State Check | | 120.00 | 260.00 |
| 9-7-99 | September | 60.00 | | 320.00 |
| 10-6-99 | October | 60.00 | | 380.00 |
| 9-22-99 | State Check | | 120.00 | 260.00 |
| 10-21-99 | State Check | | 60.00 | 200.00 |
| 11-11-99 | November | 60.00 | | 260.00 |
| 12-9-99 | December  Pd | 60.00 | | 320.00 |
| 1-10-00 | January | 60.00 | | 380.00 |
|  | Iriale's last visit with Dr. | | | |
|  | Rinaldi was May 99 per Sheryl | | | |
|  | Dykl, Nurse | | | |
|  | Pat Eisenmenger - 359-1241 | | | |
|  | | | | |
|  | Sheryl Dykl, nurse  3-7-3728 | | | |
|  | | | ext 198 | |
|  | | | | |
|  | | | | |

119262 x3 813

STATEMENT

### SERGIUS A. RINALDI, D.M.D., M.S.
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 South First STreet
Champaign, IL  61820

Dr. Rinaldi's S.S.#:         TIN#:  37-114155⁷

Patient:  Nicole    5⁴⁷⁶⁷⁷⁰³    02⁸⁸³³¹⁴⁷

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|----------------------|--------|------|-------------|
| | | | | 300.00 |
| 1-7-98 | January | 60.00 | | 360.00 |
| 1-6-98 | State Check | | 60.00 | 300.00 |
| 2-5-98 | February | 60.00 | | 360.00 |
| 3-5-98 | March | 60.00 | | 420.00 |
| 4-2-98 | April | 60.00 | | 480.00 |
| 5-7-98 | May | 60.00 | | 540.00 |
| 6-4-98 | June | 60.00 | | 600.00 |
| 3-27-98 | State Check | | 60.00 | 540.00 |
| 4-6-98 | State Check | | 60.00 | 480.00 |
| 4-21-98 | State Check | | 60.00 | 420.00 |
| 5-29-98 | State Check | | 60.00 | 360.00 |
| 6-30-98 | State Check | | 60.00 | 300.00 |
| 7-2-98 | July | 60.00 | | 360.00 |
| 7-27-98 | State Check | | 60.00 | 300.00 |
| 9-4-98 | State Check | | 60.00 | 240.00 |
| 10-6-99 | October | 60.00 | | 300.00 |
| 11-11-99 | November  Pd | 60.00 | | 360.00 |
| 12-9-99 | December  ND List | 60.00 | | 420.00 |
| 1-10-00 | January  No List | 60.00 | | 480.00 |
| | Per Beverly Bell DCFS works | | | |

119262 x3 613

**STATEMENT**

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023



Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 S. First St.
Champaign, Il 61820

Dr. Rinaldi's S.S.#:               TIN#:  37-1141557
Patient:  Zach       D5339103    98032 4638

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|----------------------|--------|------|-------------|
|      |                      |        |      | 465.00 |
| 10-6-99 | October | 65.00 | | 530.00 |
| 10-8-99 | State Check | | 130.00 | 400.00 |
| 10-22-99 | State Check | | 65.00 | 335.00 |
| 11-11-99 | November | 65.00 | | 400.00 |
| 12-9-99 | December  Vc/ | 65.00 | | 465.00 |
| 1-10-00 | January  Cancelled | 65.00 | | 530.00 |
|  | per my | | | |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

119262 x3 613

STATEMENT

**SERGIUS A. RINALDI, D.M.D., M.S.**
850 SOUTH FOURTH STREET
SPRINGFIELD, ILLINOIS 62703
Telephone: (217) 544-9023

FEB 2000
REC'D
BUS UNIT

Mrs. Marvarine Pirtle
Dept. of Children & Family Services
2125 S. First St.
Champaign, Il  61820

Dr. Rinaldi's S.S.#:               TIN#:  37-1141557
Patient: Magnolia        807 38465  068425206

| DATE | PROFESSIONAL SERVICE | CHARGE | PAID | BALANCE DUE |
|------|---------------------|--------|------|-------------|
|      |                     |        |      | 540.00 |
| 6-1-99 | June | 60.00 |  | 600.00 |
| 7-8-99 | July | 60.00 |  | 660.00 |
| 8-6-99 | August | 60.00 |  | 720.00 |
| 9-7-99 | September | 60.00 |  | 780.00 |
| 8-12-99 | State Check | 60.00 | 180.00 | 600.00 |
| 10-6-99 | October | 60.00 |  | 660.00 |
| 10-8-99 | State Check | | 120.00 | 540.00 |
| 10-22-99 | State Check | | 60.00 | 480.00 |
| 11-11-99 | November | 60.00 |  | 540.00 |
| 12-9-99 | December  Pd | 60.00 |  | 600.00 |
| 1-10-00 | January | 60.00 |  | 660.00 |
|  |  |  |  |  |
|  | Hussn left |  | 7/4/0 |  |
|  |  |  | 3/00 |  |
|  | braces were removed Aug. 16.99 |  |  |  |
|  | by Dr. Fleming |  |  |  |
|  |  | Per Shey Dyke |  |  |
|  | Dr. Rinalda removed 2 |  |  |  |
|  | Magnolia front teeth that |  |  |  |
|  | Shey questions his |  |  |  |
|  | reasoning. |  |  |  |

119262 x3 613

TO _____ *MiAmVARine*

DATE _____ 02-0'4-00 _____ TIME _____ 10:05

## WHILE YOU WERE OUT

_____ *FAYE Smith*

of _____ *Childrens Found*

Phone _____ 827 0374

Area Code        Number        Ext. 240

| TELEPHONED | | PLEASE CALL | |
|---|---|---|---|
| RETURNED YOUR CALL | | WILL CALL AGAIN | |
| CAME TO SEE YOU | | WANTS TO SEE YOU | |
| URGENT | | | |

REMARKS: _____ being discharged on
2-10-00 from children's foundation.
Their service date 9-9-98 show house
were on 8-9-98 but do
not know when they were put on.

CFS 107 (rev 2/91)
IL 418-0265

BY _____ *CB*

## SUMMARY OF AUDIT FINDINGS

PROVIDER NAME:                Sergius A. Rinaldi

PROVIDER ADDRESS:            850 South Fourth Street   Springfield, IL 62703

AUDIT PERIOD:                January 1, 1995 through December 20, 1996

DATE OF INITIAL INTERVIEW:   October 1, 1997

DATE OF EXIT INTERVIEW:      June 10, 1998

AUDITORS:                    Silvio Bartolo and Clovia Malatare

TOTAL DOLLARS PAID:          $190,726.00

DATE OF REPORT:

| EXPLANATION OF DISCREPANCIES | NUMBER OF BILLS WITH DISCREPANCIES | DOLLAR VALUE OF DISCREPANCIES |
|---|---|---|
| Overpayment due to missing records | 93 | $8,250.00 |
| Overpayment due to missing records of a specific service | 18 | $1,095.00 |
| Overpayment due to billing for non-covered services | 4 | $255.00 |
| Overpayment due to duplicate billings | 35 | $4,840.00 |
| Total amount of discrepancies | 150 | $14,440.00 |
| Recoupment amount | | $14,440.00 |

GOVERNMENT
EXHIBIT
3

PROVIDER NAME:_____Sergius Rinaldi, D.M.D._____
PROVIDER IDENTIFICATION NUMBER:____019015749_____

## PREFACE

Dr. Sergius Rinaldi is an orthodontist with two dental offices in the Springfield area. The main office is located at 3 Estates Lane West, Edwardsville, IL 62025 and the other office is located at 850 South Fourth Street, Springfield, IL 62703.

Dr. Sergius Rinaldi was selected for an audit as a result of a referral made by the Department of Children and Family Services(DCFS) and Delta Dental. Both DCFS and Delta Dental noticed in the review of billing statements from Dr. Sergius Rinaldi that he was billing for dental services for DCFS wards who are no longer wards of the State of Illinois and for services already performed by another provider. Dr. Rinaldi is allowed to bill via the C-13 voucher system for orthodontic services to DCFS wards of the state.

The purpose of this audit is to determine the extent of Dr. Rinaldi's improper billing practices for dental services provided to recipients who are DCFS wards.

The Bureau of Medical Administrative Support provided the Bureau Medical Quality Assurance with copies of paid C-13 vouchers for Dr. Rinaldi covering the period of January 1, 1995 through December 20,1996. The recipients were selected from the C-!3 vouchers for the audit.

## INITIAL INTERVIEW

The initial interview with Dr. Rinaldi was conducted on October 1, 1997 in his office at 850 South Fourth Street, Springfield, IL 62703. Dr. Rinaldi represented himself while the Department was represented by Auditors, Silvio Bartolo and Clovia Malatare.

The auditors explained that the purpose of the audit was to verify whether the provider maintained patient records and properly billed the Department for services provided to Medicaid clients.

Dr. Rinaldi provided the following information:

He is the sole owner of his dental clinics. Dr. Rinaldi maintains two offices, one is located at 850 South Fourth Street in Springfield Illinois. The other office is located at 3 Estate Lane West, Edwardsville Illinois. Dr. Rinaldi owns the building that houses his main office in Springfield. No other medical vendors practice at this location nor does he sublet space to anyone. Dr. Rinaldi rents the Edwardsville office space.

His hours of operation at the Springfield office are Monday through Wednesday from 10:30 a.m. until 6:00 p.m. His hours of operation at the Edwardsville office are Friday and Saturday 8.a.m. until 6:00 p.m. Thursdays hours are from 11:00 a.m. until 6:00 p.m, at either office depending on the number of scheduled appointments.

Dr. Rinaldi provides orthodontic services to the general public, public aid recipients and DCFS wards. He was unable to provide the exact year when he begin providing orthodontic services to DCFS wards, nor the number of public aid recipients or DCFS wards he provides dental services to. He states he see an average of thirty to sixty patients a day. He has an oral agreement with DCFS to provide orthodontic services to wards of the state. Dr. Rinaldi receives referrals directly from DCFS.

PROVIDER NAME:_____Sergius Rinaldi, D.M.D._____
PROVIDER IDENTIFICATION NUMBER:____019015749_____

Dr. Rinaldi does not utilize a billing service and all billing statements for both offices are prepared and submitted by his Springfield staff. All orthodontic services provided by Dr. Rinaldi are reviewed by the Delta Dental Plan.

Since Dr. Rinaldi 's request list was sent to him prior to the initial interview, the record review commenced immediately after the initial interview.

**Issue:** To determine whether Dr. Rinaldi maintained patient records and properly billed for medical services paid for by the Medical Assistance Program.

**Scope:**

The Auditors were provided with copies of the C-13 vouchers for services paid during January 1, 1995 through December 20, 1998. The Auditors reviewed the medical records of one hundred and twenty DCFS patients for whom three hundred and fifty services were paid in the audit sample. The amount paid for these services was $ 37,375.00.

### Audit Findings, Recommendations and Provider Response:

#### Audit Findings: I - A  (Missing records )

There were 93 instances where Dr. Rinaldi failed to produce medical records documenting the services billed. The services billed were for office visits.  The calculated overpayment due to missing records of services totaled $ 8,250.00 (Schedule I-A)

#### Recommendation: I - A  (Missing records)

1. Recover from Dr. Sergius Rinaldi $8,250.00 due to failure to produce missing records.

2. Advise Dr. Sergius Rinaldi to adhere to the rules and regulations provided in the Department's General Handbook for Providers Section I, Chapter 100,  Topics -112. and 112.1.

#### Provider Response: I - A  (Missing records)

Dr. Rinaldi stated his office space is small and that he has many records in his office and he will need to sort them out.

#### Audit Findings: I - B  (Missing Records of a Specific Service)

There were eighteen instances were Dr. Sergius Rinaldi failed to produce records of specific services billed. The services billed were for  office visits.  The calculated overpayment due to these missing records of a specific service totaled $1,095.00 (Schedule I-B)

PROVIDER NAME:_____Sergius Rinaldi, D.M.D._____
PROVIDER IDENTIFICATION NUMBER:___019015749_____

**Recommendation: I - B (Missing Records of a Specific Service)**

1. Recover from Dr. Sergius Rinaldi $1,095.00 due to missing dates of service

2. Advise Dr. Sergius Rinaldi to adhere to the rules and regulations provided in the
   Department's General Handbook for Providers Section I, Chapter 100, Topics -112. and 112.1.

**Provider Response:   (Missing Records of a Specific Service)**

Dr. Rinaldi stated that the high turnover of staff contributed to this problem

**Audit Findings: I - C (Non-Covered Services)**

There were four instances were Dr. Sergius Rinaldi billed for office visits where the records showed
the patient was out of state. The calculated overpayment due to non-covered services totaled $255.00
(Schedule I-C)

**Recommendation: I - C (Non-Covered Services)**

1. Recover from Dr. Sergius Rinaldi $255.00 due to non-covered services.

2. Advise Dr. Sergius Rinaldi., to adhere to the rules and regulations provided in the
   Department's General Handbook for Providers Section I, Chapter 100,. Topic 103.

**Provider Response: I - C (Non-Covered Services)**

Dr. Rinaldi's stated he would have to check his records.

**Audit Findings: I - D (Duplicate Billings)**

There were thirty five instances were Dr. Sergius Rinaldi billed twice for the same patient, for the same
date of service. The services billed were for office visits. The calculated overpayment due to these
duplicate billings totaled $4,840.00 (Schedule I-D)

**Recommendation: I - D (Duplicate Billings)**

Recover from Dr. Sergius Rinaldi $4,840.00 due to duplicate billings.

**Provider Response: I - D (Duplicate Billings)**

Dr. Rinaldi's state that the problem was with the Medical Liaison.

PROVIDER NAME:_____Sergius Rinaldi, D.M.D._____

PROVIDER IDENTIFICATION NUMBER:___019015749_____

## EXIT INTERVIEW

The exit interview with Dr. Rinaldi was conducted over the telephone on June 10, 1998.  Dr. Rinaldi represented himself while the Department was represented by Clovia Malatare and Silvio Bartolo.

The auditors informed the provider that the purpose of the exit interview was to discuss the audit findings and elicit the provider's responses.  The responses of Dr. Rinaldi were incorporated in the discussion of the individual audit findings.

It was explained that the Bureau's Springfield office would a send a letter to Dr. Rinaldi detailing the audit findings and recommendations.  The Administrative Review process was explained to Dr. Rinaldi, should he choose to dispute any of the audit findings.



# Office of Inspector General
# Illinois Department of Public Aid

Bureau of Medical Quality Assurance
404 North 5th Street
Springfield, Illinois 62702

### EXIT INTERVIEW/SUMMARY OF AUDIT FINDINGS

PROVIDER NAME:  Dr. Sergus A. Rinaldi, D.M.D., M.S.

PROVIDER IDENTIFICATION NUMBER:  019015749

CASE NUMBER:  981294            AUDIT PERIOD:  01/01/95  To  12/20/96

DATE OF EXIT INTERVIEW:  June 10. 1998

These are the preliminary findings regarding your audit. Although these findings are
subject to revision during the course of the audit process, they will provide general
information for each issue. More detailed audit findings will be provided in writing. At
that time, you will have several options including the right to an administrative hearing
pursuant to 89 Illinois Administrative Code 104.210.

### PRELIMINARY AUDIT FINDINGS

| | |
|---|---|
| Discussed | 1. Missing patient records |
| Discussed | 2. Missing records of a specific service |
| Discussed | 3. Non-covered services |
| Discussed | 4. Duplicate billings |
| | 5. Other_____ |

The signing of this document only acknowledges that the preliminary audit findings were
discussed with you or a designee and does not indicate agreement with those findings.

IDPA Representative(s):
Clovia Malatare

_____ 06/10/98
Signature                    Date
Silvio Bartoli

_____ 06/10/98
Signature                    Date

Other persons present at exit interview:

_____

_____

Provider Designee:

_____ 7/2/98
Signature                    Date

Title: _____
S.A. Rinaldi, DMD, MS PC



ILLINOIS DEPARTMENT OF
**Healthcare and**
**Family Services**

**Rod R. Blagojevich, Governor**
**Barry S. Maram, Director**

201 South Grand Avenue East
Springfield, Illinois 62763-0002

**Telephone:** (217) 782-1200
**TTY:** (800) 526-5812

August 5, 2005

Amy S. Leopard
Walter & Haverfield, LLP
The Tower at Erieview
1301 East Ninth Street, Suite 3500
Cleveland, Ohio 44114-1821

Re:    FOIA 05/1292 and 05/1344

Dear Ms. Leopard:

Attached are the Department records regarding the information you requested. Client names and identification numbers have been redacted. The redacted information is exempt from release under the Illinois Freedom of Information Act (5 ILCS 140/1 et seq.) (FOIA).

The redacted information is exempt pursuant to sections 7(1)(a) and 7(1)(b)(i) of FOIA.

Section 7 (1)(a) provides in pertinent part:

> Section 7. Exemptions.
>
> (1)  The following shall be exempt from inspection and copying:
>
>> (a)  Information specifically prohibited from disclosure by federal or State law or rules and regulations adopted under federal or State law.

Federal regulations at 45 CFR 160.103, 45 CFR 164.502 and 45 CFR 164.514, promulgated under the Health Insurance Portability and Accountability Act (HIPAA), do not allow the Department to release a client's health information when there is a reasonable basis to believe that it could be used alone or in combination with other reasonably available information, to identify a client. There is a reasonable basis to believe that a client could be identified by a client's name and identification number, therefore, it is individually identifiable health information and is confidential, and the Department is prohibited from releasing it.

In addition, federal regulations at 42 CFR 431.300-307 require that state law prohibit the use or disclosure of information concerning applicants and recipients of Medicaid services. Illinois law satisfies this federal requirement at Section 11-9 of the Illinois Public Aid Code (305 ILCS 5/11-9) and 89 Illinois Administrative Code 102.30.

**GOVERNMENT**
**EXHIBIT**
7

**E-mail:** hfswebmaster@illinois.gov

**Internet:** http://www.hfs.illlinois.gov/

Page Two
Leopard Letter
August 5, 2005

Section 11-9 of the Illinois Public Aid Code provides in pertinent part:

> Section 11-9 Protection of records - - Exceptions. For the protection of applicants and recipients, the Illinois Department , the county departments and local governmental units and their respective officers and employees are prohibited, except as hereinafter provided, from disclosing the contents of any records, files, papers and communications, except for purpose directly connected with the administration of public aid under this Code.

Section 102.30 of the Illinois Administrative Code provides in pertinent part:

> Section 102.30 Confidentiality of Case Information
>
> (a) For the protection of clients, any information about a client or case is confidential and shall be used only for purpose directly related to the administration of the assistance programs.
>
>   1) The establishment of a client's initial or continuing eligibility for public assistance;
>
>   2) The establishment or the extent of an individual's need for financial assistance, medical assistance or other services; and
>
>   3) The establishment of procedure assuring the health and safety of the client.
>
>       (b) Use of information for commercial, personal; or political purposes is specifically prohibited.

The second applicable FOIA exemption, section 7(1)(b)(i), provides in pertinent part:

> Section 7. Exemptions.
>
> (1) The following shall be exempt from inspection and copying. . . .
>
>   (b) Information that, if disclosed; would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include, but is not limited to:
>
>       (i) files and personal information maintained with respect to clients, patients, residents, students or other individuals receiving social, medical, educational, vocational financial, supervisory or custodial care or services directly or indirectly from federal agencies or public bodies.

*2*

FOIA 1190/1195
Walter & Haverfield LLP

## June 24, 2005 Letter Concerning April, 2005 Request

1. **Records related to the development and implementation of the rate methodology used to determine reimbursement rates for orthodontic services under all IDPA programs, especially any Records related to the prorations for orthodontics services and the use of monthly adjustments for payments on braces paid by IDPA, Delta Dental or Doral Dental.**

   **Status (as reflected in June 24th letter)**
   **You may limit request to records related to the development and implementation of the rate methodology used to determine reimbursement rates for orthodontic services under all IDPA programs.**

   Response:

   The current rate methodology for the Healthcare and Family Services (HFS, formerly IDPA) dental program was developed in the mid-1980's and any documentation of that methodology no longer exists. The Department reimburses for four basic orthodontic CDT procedure codes:

   D8080 Initial Orthodontic Appliance Placement
   D8660 Initial Exam, Records, Radiographs and Facial Photo
   D8670 Monthly Adjustments
   D8999 Orthodontic Evaluation (Only paid if the orthodontia request is denied.)

   The Department does not pro-rate reimbursement for orthodontic services. Rates have always been established and paid for each individual procedure code. A history of rates for these services is included in Attachment A.

2. **Records related to Center for Medicare and Medicaid Services (CMS), formerly know as the Health Care Financing Administration (HCFA), and IDPA's policies and interpretations concerning missed appointments for medical and dental programs.**

   **Status (as reflected in June 24th letter)**
   **I have received an October 30, 2002 email regarding the CMS policy want to confirm that there were no other records prior to this date, i.e. from 1994 to 2001.**

**4**

Response:

The only other information available concerning missed appointments is in 89 Illinois Administrative Code, Chapter I, Section 140.6 which states, "the following services are not covered under the Department's medical assistance programs" lists q. unkept appointments. The information is available at:

http://www.hfsillinois.com/assets/060105140.pdf

3. **IDPA, the IDPA Medical Dental Unit, and the IDPA Bureau of Comprehensive Health Services correspondence from and to Delta Dental and Doral Dental regarding orthodontic payments, missed appointments, prorations of orthodontic fees, reimbursement methodologies, and use of the American Dental Association (ADA) procedure codes for dental and orthodontic services.**

   **Status (as reflected in June 24th letter)**
   **You may limit this request to correspondence between 1994 and 2002 regarding orthodontic payments, missed appointments, prorations of the orthodontic fees, orthodontic reimbursement methodologies and the use of the ADA procedure codes.**

   Response:

   The correspondence requested above is included in Attachment B.

4. **Records of any IDPA personnel, including David Spinner, Manager of the Medical Dental Unit, and Steven Bradley, the head of the Bureau of Comprehensive Health Services, related to**

   a. **The Dental Policy Clarification dated March 2000, a copy of which is attached;**

   b. **The disavowance of the attached Dental Policy Clarification; and**

   c. **IDPA departmental policies and interpretations necessary to implement the dental policy clarification or the revocation of the attached Dental Policy Clarification.**

   **Status (as reflected in June 24th letter)**
   **The May 20, 2005 letter from your office is non-responsive. You may limit your response to Records of any IDPA personnel, including David Spinner and Steven Bradley, related to the Dental Policy Clarification dated March 2000, which was attached from 1999 to present.**

**5**

Response:

The attached was never an official Department policy and therefore, was never applied. This "draft" policy clarification was never distributed because it incorrectly stated the Department's reimbursement policy for orthodontia services. As a result, there was no need for a disavowance.

### June 24, 2005 Letter Concerning May 16, 2005 Request

**1. Electronic copies of the form any and all manuals by Delta Dental or Doral Dental for the IDPA Dental Program, whether that be a "Criteria Manual", an "Office Reference Manual" or any other title for a manual of IDPA dental policies, for each year of the past 10 years (1994-2005).**

**Status (as reflected in June 24, 2005 letter)**
**A check for $95.50 was sent under separate cover for electronic copies of the manuals. You provide on disk or other media or email to aleopard@walterhav.com.**

Response:

After receiving the $95.50 check, the Department sent paper copies of the Dental Office Reference Manuals. The most current Dental Office Reference Manual can be found electronically on the Department's website at:

http: //www.hfsillinois.com/reimbursement/dental.html

**2. A list of people to whom the above manual were sent.**

**Status (as reflected in June 24, 2005 letter)**
**You may limit this request to a list of all people to whom the manuals were sent from 1994 to 2004.**

Response:

The Dental Office Reference Manuals are sent to all dental providers enrolled in the Medical Assistance program as reflected in the Department's provider database on that particular mailing date. No lists was ever produced and; therefore, do not exist.

### July 8, 2005 Letter

**1. Copies of the Chapter 100 series from the IDPA Handbook for Providers of Medical Services, that were sent beginning in 1994 through 2001 to dentists participating in the IDPA programs and if sent a list of names of the dentists to whom Chapter 100 was sent.**

Response:

The complete revision of the Illinois Medical Assistance Program Chapter 100 and
general appendices was sent to all enrolled Medical Assistance providers in October
1992. That manual is included in Attachment C.

Additional Provider Notices were sent out to dentists on July 6, 1995, February 7,
1997, September 23, 1997, January 31, 2002 and June 26, 2002. Those notices are
attached.

**2. Copies of the Chapter 100 series from the IDPA Handbook for Providers of
Medical Services, that were sent beginning in 1994 through 2001 to Sergius
Rinaldi, D.D.S. or his practice, and if sent, any cover letter or correspondence
relating to same.**

Response:

As stated above, the complete revision of the Illinois Medical Assistance Program
Chapter 100 and general appendices were sent to all enrolled Medical Assistance
providers in October 1992. Since Dr. Rinaldi was an enrolled dentist from September
15, 1981 through December 25, 2001, he would have received the mailing listed
above that were sent during that period.

7

## **PROOF OF SERVICE**

I certify that I have served a copy of the foregoing document by depositing a copy thereof in the United States Mail and addressed to:

Thomas M Dawson
2300 S. Fourth Street
Leavenworth, KS 66048

Michael Costello
Attorney at Law
631 East Allen
Springfield, IL 62703

on this 2nd day of September, 2005.