E-FILED
Tuesday, 26 September, 2006 01:31:48 PM
Clerk, U.S. District Court, ILCD

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

## NOTICE OF ISSUANCE OF MANDATE

DATE:   September 22, 2006

TO:     John M. Waters
        United States District Court
        Central District of Illinois
        151 U.S. Courthouse
        600 E. Monroe Street
        U.S. Courthouse & Federal Building
        Springfield, IL  62701

FROM:   Clerk of the Court

RE:     05-4113
        USA v. Rinaldi, Sergius
        01 CR 30110, Richard Mills, Judge

        Herewith is the mandate of this court in this appeal, along
        with the Bill of Costs, if any.  A certified copy of the
        opinion/order of the court and judgment, if any, and any
        direction as to costs shall constitute the mandate.

        [ ] No record filed
        [X] Original record on appeal consisting of:
**ENCLOSED:**                                           **TO BE RETURNED AT LATER DATE:**
        [3]     Volumes of pleadings                    [ ]
        [ ]     Volumes of loose pleadings              [ ]
        [3]     Volumes of transcripts                  [ ]
        [4]     SEALED Pieces of exhibits - 2 files & 2 boxes   [ ]
        [ ]     Volumes of depositions                  [ ]
        [4]     In Camera material                      [ ]
        [ ]     Other_____
                _____
                Record being retained for use           [ ]
                in Appeal No. _____

        Copies of this notice sent to:          Counsel of record
        [X]     United States Marshal
        [X]     United States Probation Office

**NOTE TO COUNSEL:**
        If any physical and large documentary exhibits have been filed in
        the above-entitled cause, they are to be withdrawn ten days from the
        date of this notice.  Exhibits not withdrawn during this period will
        be disposed of.

        Please acknowledge receipt of these documents on the enclosed copy
        of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        Received above mandate and record, if any, from the Clerk, U.S.
        Court of Appeals for the Seventh Circuit.

Date: 9/26/06                           s/Marleen Cooke
(1071-120397)                           Deputy Clerk, U.S. District Court

CERTIFIED COP

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-4113

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SERGIUS A. RINALDI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01 CR 30110—**Richard Mills,** *Judge.*

ARGUED APRIL 3, 2006—DECIDED AUGUST 31, 2006

Before BAUER, EASTERBROOK, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* After protracted proceedings before the district court, Sergius A. Rinaldi pleaded guilty to the charges of mail fraud, 18 U.S.C. § 1341, and obstruction of justice, 18 U.S.C. § 1518. The plea was accepted by the court, and judgement was entered on March 25, 2002. Before sentencing, Rinaldi moved to withdraw the plea based upon claims of actual innocence. He argued, in part, that his behavior was the result of Adult Attention Deficit Disorder, and that the disorder, which was diagnosed after he entered his plea, negated his capacity to form the requisite *mens rea* for the crimes. The district court denied his motion and sentenced him to 21 months' imprisonment and a fine of $500,000. Rinaldi appeals the

denial of his motion to withdraw the guilty plea, his sentence and fine, and other procedural matters before the district court. We affirm.

Rinaldi's case is not new to this Court. During the course of the legal proceedings against him we have heard two interlocutory appeals through which we had the opportunity to establish the history of the matter. *See In re Grand Jury Proceedings*, 280 F.3d 1103 (7th Cir. 2002); *United States v. Rinaldi*, 351 F.3d 285 (7th Cir. 2003). In the interest of efficiency, we relate only those facts relevant to the instant appeal.

## I. Background

Sergius A. Rinaldi, D.M.D., is an orthodontist with offices in Edwardsville and Springfield, Illinois. Part of his practice involved the treatment of wards of the state of Illinois, who were under the protection of the Illinois Department of Children and Family Services (DCFS), and individuals who received Medicaid assistance through the Illinois Department of Public Aid (IDPA). From 1994 to 2001, Rinaldi submitted claims for payment to these two departments; some of these claims were for services not rendered.

In January 2001, Rinaldi received a grand jury subpoena demanding the production of records pertaining to these billings. The subpoena covered his original case files and forms for certain patients, appointment books and logs, patient sign-in sheets, and records of cancellation. These records were never produced. At a contempt hearing on the matter, the government presented evidence that Rinaldi had concealed the files and documents after receiving the subpoena. The district court held Rinaldi in contempt and ordered him to be imprisoned and fined until the material was produced. We affirmed this deci-

No. 05-4113                                          3

sion in *In re Grand Jury Proceedings*, 280 F.3d 1103 (7th Cir. 2002). On November 8, 2001, Rinaldi was indicted for executing a scheme to defraud the Medicaid system in the state of Illinois and obstructing justice.

In late February 2002, with the aid of counsel, Rinaldi negotiated with the government and pleaded guilty to one count of fraud and one count of obstructing justice. The district court conducted a full Rule 11 hearing and entered judgment on March 25, 2002. The sentencing hearing was initially scheduled for the following June 24, but was repeatedly deferred at the request of both parties.

On January 29, 2003, Rinaldi moved to withdraw his guilty plea based upon a two-prong claim of actual innocence. Primarily, he argued that he had recently discovered that he submitted invoices using a "bundled fee", not a "fee for services," system. The bundled fee system would have allowed him to bill a flat rate for a package of services regardless of whether they were actually performed. Alternatively, he claimed that any mistakes he made in record-keeping and billing were the result of his newly diagnosed, but pre-existing, DSM IV condition of Adult Attention Deficit Disorder (AADD), not criminal intent. The district court denied his motion, holding that both of these claims were available prior to his having entered his plea, and that they ran contrary to his testimonial admission of guilt at the plea colloquy.

The defense moved to have the district court reconsider the denial of his motion to withdraw the guilty plea. In his motion, Rinaldi argued that prior to pleading guilty he believed he properly billed Medicaid under the bundled-fee system. He submitted that the government misrepresented that the billing procedure was illegal, and promised, but failed, to provide legal support for this argument. It was only after the government's failure to produce the supporting law that he learned IDPA paid for services with

4                                                  No. 05-4113

the bundled-fee agreement. While this motion was pending, the district court ordered Rinaldi to undergo a custodial psychological exam to test the veracity of his AADD claim. The defendant filed an interlocutory appeal protesting the custodial exam, and we reversed the order. *United States v. Rinaldi*, 351 F.3d 285 (7th Cir. 2003). On remand, the district court appointed Dr. Sue Moriearty, Ph.D., ABPP, to conduct a non-custodial examination. Additionally, Dr. Phillip E. Bornstein, M.D., FAPA, and his assistant, Helen P. Appleton, Ph.D., were hired as experts for the government. In their reports submitted to the court, all three doctors concluded that Rinaldi had the mental capacity to form the requisite intent to submit fraudulent bills and obstruct justice.

The defendant submitted reports from Robert Chapman, M.D., and George Athey, Jr., Ph.D., ABPP, a clinical psychologist and neuropsychologist. Dr. Chapman diagnosed Rinaldi with AADD and opined that the condition would diminish his capacity to form the requisite criminal intent. Dr. Athey reported that, in his opinion, Rinaldi was incapable of forming the intent necessary to carry out the crimes as charged. After reviewing the reports and the entirety of the record, the district court denied Rinaldi's motion to reconsider. Judge Mills held that even the presence of the AADD symptoms did not preclude Rinaldi's capacity to form the requisite *mens rea*. *United States v. Rinaldi*, 347 F.Supp.2d 594, 600 (C.D. Ill. 2004). Regarding the bundled-fee system, the court further held that the IDPA did not allow this invoice method, and that any evidence or argument regarding the claim was available to Rinaldi contemporaneous with his plea; thus it was not new evidence warranting a withdrawal of the plea. *Id.* at 604. Rinaldi filed a subsequent motion to reconsider the denial of his motion to reconsider. This, too, was denied. The district court set the sentencing hearing for April 25, 2005.

No. 05-4113                                              5

Following the denial of his motions to reconsider, Rinaldi filed three successive motions to continue the sentencing hearing. In May 2005, he argued that he needed six additional months to conduct a statistical analysis of the impact of his fraud. The methodology for this analysis consisted of tracking down and interviewing the defendant's former patients about their past appointments and treatments. Because of a delay in obtaining the necessary contact information from the IDPA, the district court granted a three month extension, but stated that it would be the final continuance. Six months, the court warned, was "too long." Order 4, (May 25, 2005) (No. 144). Nevertheless, at the end of July, the defendant requested an additional three months to continue working on his statistical analysis and to ensure the availability of crucial witnesses. The district court granted Rinaldi the time necessary only to secure the attendance of his expert witnesses. The sentencing hearing was finally held over the course of three days on October 14, 17, and 18, 2005.

Prior to the hearing, both parties filed sentencing memoranda. Rinaldi objected to the calculation of loss, certain facts regarding his offense conduct, and his criminal intent as described in the pre-sentence investigation report (PSR). He also moved for a downward departure based upon his claim of diminished capacity. The government moved for an upward departure, arguing that any difficulty in calculating the loss caused by Rinaldi's scheme was the result of his own obstruction of justice.

At the hearing, both parties re-presented their evidence submitted in consideration of the motion to reconsider Rinaldi's motion to withdraw his guilty plea. Doctors Athey and Chapman testified for the defendant consistent with their previously filed reports. Dr. Chapman, however, acknowledged under questioning that if the evidence of defendant's conduct was as the government

described, it would show "intentional conduct" requiring some "executive function" and "decision-making," and that to carry out the fraud for multiple patients, as Rinaldi did, would be "an intentional act." Sentencing Hr'g Tr., Vol. I at 122-25, Oct. 14, 2005.

The government presented testimony from Rinaldi's former employees and their medical experts. The employees detailed Rinaldi's specific fraudulent conduct in billing for services not rendered and his having removed records from his office after receiving the government subpoena. Dr. Bornstein testified that Rinaldi's consistent alteration of one patient's records reflected a "systematic, calculated behavior." Sentencing Hr'g Tr., Vol. II at 450, Oct. 17, 2005. He further opined that based upon prior testimony introduced at the hearing, and his personal evaluation of the defendant, Rinaldi had both the capacity to form the requisite *mens rea*, and to conform his actions to the demands of the law. Finally, the court heard the testimony of Susan K. Jackson, an auditor for the Illinois State Police Medicaid Fraud unit, who summarized the evidence supporting the loss calculation in the PSR.

When calculating Rinaldi's sentence, the district court adopted the recommendations of the PSR and found an offense level of 14, criminal history category of I; yielding a Guideline range of 15 - 21 months. After examining the factors presented in 18 U.S.C. § 3553(a), the court rejected both parties' requests for "departures," and sentenced Rinaldi to 21 months' imprisonment and a fine of $500,000, $250,000 per count.

On appeal Rinaldi claims the court erred in (1) denying his motion to withdraw his guilty plea, (2) denying his motion for continuance to determine the impact of his fraudulent scheme, and (3) the reasonableness of his sentence. We address these claims in sequence.

No. 05-4113                                                                7

## II. Analysis

### A. The Motion to Withdraw His Guilty Plea

Rinaldi submits that because he presented evidence of his actual innocence, the district court erred in denying his motion to withdraw the guilty plea. The right to withdraw a guilty plea is not absolute. *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004). Once his plea was accepted by the court, withdrawal was available only upon his showing a "fair and just reason" to do so. FED. R. CRIM. P. 11(d)(2)(B); see also *United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003). This is no mean feat. Guilty pleas are not to be treated as a strategic maneuver by the parties, and we presume the verity of the defendant's statements made at a Rule 11 colloquy. *United States v. Silva*, 122 F.3d 412, 415-16 (7th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995). Being legally innocent of a crime, however, is a fair and just reason to withdraw a guilty plea. *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993). We review the district court's factual findings as to whether the defendant presented a "fair and just reason" for clear error. *Bradley*, 381 F.3d at 645. The district court's overall decision on Rinaldi's motion to withdraw the guilty plea is reviewed for an abuse of discretion. *Id.* at 644.

In examining a motion to withdraw a guilty plea, the district court has three options: it can permit the withdrawal of the plea, conduct an evidentiary hearing, or deny the motion with an explanation as to why the evidence is insufficient or incredible. *Silva*, 122 F.3d at 415. The district court below considered substantial evidence from both parties when hearing Rinaldi's motion to reconsider the court's denial of his motion to withdraw the guilty plea. Judge Mills's opinion on the matter reviewed the medical reports and testimony of Dr. Chapman and Dr. Athey for the defendant, and Dr. Moriearty and Dr.

Bornstein for the government. Dr. Chapman diagnosed Rinaldi with AADD, but noted that the defendant's limitations stemming from the diagnosis "did not rise to the level of incompetence to plead, stand trial, or proceed." *Rinaldi*, 347 F.Supp.2d at 598. Further, Dr. Chapman acknowledged that there was no clinical evidence indicating that Rinaldi was incapable of forming the requisite *mens rea* during the relevant period.

The district court then compared this testimony to that of Dr. Moriearty and Dr. Bornstein, neither of whom diagnosed Rinaldi with AADD. Dr. Moriearty specifically opined that even if the defendant's symptoms were such as he presented or exaggerated in her examination, they would not render him incompetent to form the specific intent necessary to commit the crimes as charged. Dr. Bornstein had a similar conclusion. He found that, while Rinaldi did have a narcissistic personality disorder, the defendant presented no mental defect that would prevent him from possessing the necessary *mens rea* for the crime, or to be capable of assisting his attorney in the plea negotiations or entering the plea itself. Additionally, Dr. Bornstein observed that during the period in which Rinaldi alleged a diminished mental capacity from AADD, he was able to build and maintain a successful dental practice with offices in two separate cities. In Dr. Bornstein's final opinion, Rinaldi's intellectual capacity was not diminished, but was instead above average.

Following this detailed review of the medical evaluations submitted by both parties, the district court concluded that "the Defendant's AADD diagnosis did not prevent him from forming criminal intent. Accordingly, he has not presented a claim of actual innocence as to that issue." *Rinaldi*, 347 F.Supp.2d at 600. In making this finding, the district court explicitly agreed with the testimony of Dr. Moriearty and Dr. Bornstein, explaining that it was particularly persuaded by Rinaldi's ability to